CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 26 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT PHAROAH HOWARD, A.K.A., ABDUL-HAMZA WALI MUHAMMAD, | CASE NO. 7:18CV00068 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| D. STIDHAM, ET AL., | By: Hon. Glen E. Conrad |
| Defendants. | Senior United States District Judge |

Robert Pharoah Howard, also known as Abdul-Hamza Wali Muhammad, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983 Howard's complaint alleges that various prison officials failed to protect him from being attacked by another inmate or used excessive force against him. After review of the record, the court concludes that the defendants' dispositive motions must be granted in part and denied in part.

I. BACKGROUND.

A. Plaintiff's Evidence and Claims.

In 2017, Howard was confined at Red Onion State Prison ("Red Onion"), housed in a single cell.[1] On April 10, 2017, he and inmate Tanner told Counselor Stallard and Unit Manager Swiney that they were not compatible cell partners, and that Tanner was a known murderer who was scared to be in a cell with a black prisoner who was vulnerable to sexual assault, like Howard. See Mot. Am. 2, ECF No. 10; Decl. Ex. 2-3, 5-6, ECF No. 19-1. Nevertheless, Stallard "signed off" on Howard and Tanner occupying a double cell together—cell D-3 in the general population area. Howard presents copies of offender request forms he filed on April 10, 2017, addressed to Assistant Warden Artrip, Swiney, and Stallard. These forms complained that

---

[1] This summary of Howard's evidence is taken from his verified complaint, motion to amend, verified declaration and response to the motion to dismiss, and the documents attached to his pleadings and incorporated by reference, ECF Nos. 1, 10, and 19.

Howard and Tanner had been told that if they did not agree to be cell partners, they would be returned to long-term segregation; that they had asked not to be placed in a cell together; that they had had verbal disputes; and that Howard feared Tanner would try to harm him. Howard also presents an offender request form warning these three officers that he needed to be moved out of the cell with Tanner or Tanner might kill him in his sleep.

On June 4, 2017, Howard was downloading some music onto his music device, when Tanner jumped on his back from behind, wrapped his arms and legs around Howard, and stabbed him three times in the neck. Officer D. Stidham in the control booth fired a shot from the ".40 caliber launcher assault rifle," striking Howard in the "right inner thigh/calf muscle area, causing a 4th stabbing attempt by" Tanner. Compl. 4, ECF No. 1. A floor officer had already sprayed Howard twice in the face with "pepper spray." Id.; Decl. 4, ECF No. 19. On Tanner's fifth stabbing attempt, his knife broke. Howard took him to the floor and managed to hold him off until officers contained the situation.

After this incident, Howard received medical treatment for his injuries and was placed in a disciplinary segregation cell. He was charged with a disciplinary infraction for fighting. The next day, after officers viewed the surveillance video footage of Tanner's attack, Swiney dismissed the fighting charge against Howard, who returned to his housing unit and his prison job. Tanner received a disciplinary charge of attempted murder. Tanner told Howard that Swiney had ordered him to "kill that 'Nigger Muhammad he ain't nothing but a child molesting baby raper.'" Compl. 5, ECF No. 1.

Howard had "a 4 inch deep hole in [his] neck which was bleeding also the deep laceration to [his] right inner thigh/calf area." Id. The injury on Howard's leg became infected. He was

2

moved to the medical unit and treated with antibiotics. The wound healed, but Howard has a "permanent keloid for life" from the incident. Id. at 7.

Howard filed a grievance complaining that Stidham had violated policy by shooting him in the leg when he was not the aggressor in the altercation. Artrip found the grievance to be unfounded, and in the second level appeal, Regional Administrator Elam upheld that finding.

Liberally construing Howard's § 1983 complaint as amended, ECF Nos. 1 and 10, he claims that: (1) Swiney and Stallard assigned him to be Tanner's cellmate after being informed that Tanner posed a danger to Howard, and Artrip and Elam failed to fix this problem; (2) Stidham used excessive force against Howard, and Swiney, Fannin, Artrip, and Elam "conspir[ed] to interfere with" Howard's civil rights through their use of force policies and inadequate training and supervision; and (3) Fannin failed to conduct a proper investigation. Compl. 8-10, ECF No. 1; Mot. Am. 1, ECF No. 10.

B. Defendants' Evidence.

In April 2017, Howard and Tanner were ready to advance from long-term segregated confinement to Phase II of the segregation step down program at Red Onion. See Mem. Supp. Mot. Summ. J. Ex. 3, Swiney Aff. ¶ 4, ECF No. 24-3. In Phase II, each offender is assigned to live in a double cell with another offender. Id.

> [T]o facilitate the process, on a case by case basis, [Swiney] and other available staff, such as the assigned counselor . . . bring each eligible offender into the pod area to discuss the transition to a double cell. At this time, the offender may suggest a cellmate. [Swiney] consider[s] the offender's ideas and suggestions and check[s] the compatibility of potential cellmates including factors such as their age, height, weight, criminal offenses and gang affiliations.

Id. Before Howard and Tanner were celled together, Swiney and Stallard met with each of the inmates individually on April 20, 2017. Swiney states, "Both Tanner and Howard indicated that they had no problems with the other and that they could live together in the same cell. Both

3

offenders signed [a] cell assignment agreement. . . . At no time, did Howard or Tanner state that they did not want to be assigned to the same cell." Id. at ¶ 5. Stallard states that he conducted a compatibility check on the two inmates and found no conflicts. The cell assignment agreement that Howard signed stated: "This is an acknowledgement that I, Offender [Howard], feel I can live with Offender [Tanner] and DO NOT fear for my life being housed in the same cell with him in General Population." Id. at Encl. A. Tanner signed a similar agreement. Both the agreements were also signed by Stallard and Swiney as witnesses, who deny that they pressured or coerced the inmates to share a cell.

Both Swiney and Stallard had offices easily accessible to Howard and Tanner during the two hours they spend outside their general population cell each day for recreation and programming. Both officers state that neither Howard nor Tanner complained to them about the cellmate assignment or indicated that the two inmates did not want to live together. Swiney denies that he told Tanner to assault Howard or referred to Howard in a derogatory manner.

On June 4, 2017, at approximately 8:54 a.m., Officer Stidham was working in the D2 gunpost when she witnessed the altercation between Tanner and Howard. She verbally warned the offenders to stop fighting. When they failed to do so, Stidham activated a warning buzzer. The inmates continued fighting, Stidham dispersed one OC round[2] from the 40MM single launcher at the inmates' lower extremities. Still, the inmates continued struggling with each other. Stidham gave another verbal warning, with no response from the inmates, and then dispersed a second OC round from the 40MM single launcher, "directed at the offenders' lower extremities." Mem. Supp. Mot. Summ. J. Ex. 2, Stidham Aff. ¶ 4, ECF No. 24-2. A K-9 officer

---

[2] The substance referred to here as "OC" is a chemical agent similar to what is commonly known as pepper spray or mace and irritates a person's eyes, throat, and nose. See, e.g., Park v. Shiflett, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray).

also entered the pod at this point and approached the fighting inmates.[3] Tanner and Howard then separated and complied with officers' orders by lying down on the floor.

After the altercation between Howard and Tanner on June 4, 2017, a nurse who examined Howard observed a small scratch on the back of his neck with no bleeding and an area on his right calf where the skin was broken. The nurse cleaned both areas and applied triple antibiotic ointment. A doctor checked Howard's wounds on June 7, 2017, and noted that both were healing. Several days later, an infection developed in the calf wound, for which Howard received antibiotic medication, wound care in the medical unit for three days, and follow up care for two more weeks.

C. Pending Motions

Defendants Artrip, Fannin, and Elam have filed a motion to dismiss. Defendants Swiney and Stallard have filed a motion for summary judgment.[4] Howard has responded to the defendants' motions, making them ripe for disposition.

II. DISCUSSION

A. Standards of Review

A motion to dismiss tests the legal sufficiency of a complaint. See, e.g., Bell Atl. Corp. v. Twombly, 553 U.S. 544, 553-63 (2007). "[T]he complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks and citation omitted). In conducting its review, a court must view the facts in the light most favorable to the plaintiff, but "need not

---

[3] The K-9 officer's approach appears in the video footage submitted in support of the defendants' motion.

[4] Howard's so-called motion for summary judgment moves for a judgment that Howard was not fighting voluntarily with Tanner when Stidham fired the OC rounds at him. See Pl.'s Mot. Summ. J., ECF No. 27. This issue is not a separate claim on which Howard could be entitled to summary judgment, nor is it a material element of his Eighth Amendment claims. Moreover, the parties do not disagree on this point. Accordingly, the court will deny this motion, but will consider the pleading's contents and attached exhibits as part of Howard's response to the defendants' motions.

5

accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotation marks and citation omitted). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts" however, and thus, need not be taken as true. Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

B. Failure to Protect.

The Eighth Amendment's prohibition against cruel and unusual punishment imposes on prison officials an "obligat[ion] to take reasonable measures to guarantee inmate safety," specifically, "to protect prisoners from violence at the hands of other prisoners." Makdessi v. Fields, 789 F.3d 126, 132 (4th Cir. 2015). A prisoner alleging that prison officials have failed to keep him reasonably safe from another inmate must show that (i) objectively, he was incarcerated under conditions posing a substantial risk of serious harm, and (ii) subjectively, the official had a "sufficiently culpable state of mind to be held liable," namely, "deliberate indifference" toward the substantial risk of serious harm. Id. at 133. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," cannot constitute

"infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 838 (1994). Specifically, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The court finds material facts in dispute that preclude summary judgment. Howard's evidence is that he and Tanner told Swiney and Stallard on April 10, 2017, that they did not want to be cell mates. Howard filed request forms addressed to these defendants and Assistant Warden Artrip, giving reasons that he and Tanner were not compatible and asking them to move him away from Tanner. Howard also says he suffered a deep wound to his neck from Tanner's attack. Taking the evidence in the light most favorable to Howard, the court concludes that a reasonable fact finder could be persuaded that these defendants knew before June 4, 2017, that housing Howard in the same cell with Tanner posed an excessive risk of serious harm to Howard, and failed to respond reasonably to that risk.

The defendants' evidence directly disputes Howard's account. Stallard and Swiney present the forms the inmates signed agreeing to be cell mates and deny that they were coerced into doing so. The officers also state that they never received any complaints from Tanner or Howard about being cell mates, and they present medical records indicating that Howard suffered only a scratch to his neck from Tanner's attempt on his life. From this evidence, a reasonable fact finder could determine that the defendants did not know of, or respond unreasonably to, any excessive risk of harm Tanner posed to Howard as his cell mate.

Based on the material disputes between the parties' evidence (what the defendants knew and when and the extent of the injury Tanner's attack caused), the court will deny the parties' motion for summary judgment as to Howard's Eighth Amendment claims against Stallard and Swiney in their individual capacities for failure to protect him from Tanner. The court will also

deny Artrip's motion to dismiss as to the claim that before the assault, Artrip knew from Howard's inmate request to be moved that Tanner presented a risk of harm and failed to alleviate it.[5]

The court will grant the motion to dismiss as to Howard's claims that any of the defendants' policies, Fannin's alleged investigative shortcomings, or training or supervision practices by him, Artrip, or Elam played any role in <u>causing</u> the alleged failure to protect Howard from Tanner. No official can be held vicariously liable for actions of his or her subordinates under the theory of <u>respondeat superior</u>. <u>Id.</u> The plaintiff must state facts showing that: (1) the supervisor knew that his subordinates were engaged in conduct that posed a "pervasive and unreasonable risk of constitutional injury"; (2) the supervisor's response to this knowledge was so inadequate as to show "deliberate indifference or tacit authorization" of the risky practices; and (3) there was an "affirmative causal link between the supervisor's inaction and the particular constitutional injury" the plaintiff suffered. <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994).

Howard makes no such showing. At the most, he makes conclusory assertions of failure to train or failure to supervise. To survive a motion to dismiss, the complaint must provide more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Id.</u> Howard states no facts about prior events putting these defendants on notice that policies, training, or supervision were deficient regarding

---

[5] Howard cannot prevail in any claim against the defendants in their official capacities for monetary damages, because such relief is not available under § 1983. <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989). Therefore, the court will grant the defendants' motions as to such claims. Moreover, because Howard is now confined at Wallens Ridge State Prison, these defendants have no authority to grant him the injunctive relief he sought—a transfer out of the western region of Virginia. <u>See</u> <u>Rendelman v. Rouse</u>, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there."). The court will dismiss his claims for injunctive relief as moot.

8

cellmate assignments. Accordingly, the court will grant the motion to dismiss as to Howard's attempted supervisory liability claims on these issues against Artrip, Fannin, and Elam.

## C. Excessive Force

The Eighth Amendment does not prohibit all applications of force or infliction of pain against prisoners. United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). "[O]nly the unnecessary and wanton infliction of pain" rises to the level of a constitutional violation. Whitley v. Albers, 475 U.S. 312, 319 (1986). In analyzing an Eighth Amendment claim of excessive force, the court conducts an objective inquiry—whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation," and a subjective inquiry—whether a specific prison official "acted with a sufficiently culpable state of mind." Hudson v. McMillian, 503 U.S. 1, 8 (1992).

The objective component focuses on "the nature of the force," which must be "nontrivial," Wilkins v. Gaddy, 559 U.S. 34, 39 (2010), and can be met by "the pain itself," even if the prisoner has no enduring injury." Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996). In addressing the subjective component, the court must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 5. Factors the court may consider include (1) the need for application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury, (4) the threat reasonably perceived by the responsible official based on the facts known to her, and (5) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. While the court must afford deference to prison administrators' "discretion" regarding necessary measures to maintain security, that discretion "does not insulate from review actions taken in bad faith and for no legitimate purpose." Id. at 322. If "the

evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain," and it presents a factual issue as to whether the force was nontrivial, the case must go to trial. Id.

Taking the evidence in the light most favorable to Howard, the court finds material disputes of fact on which Howard might convince a reasonable fact finder that Stidham's action was not a good faith effort to restore order. Howard's evidence is that he was clearly the inmate being attacked and responded by trying to control, not harm, Tanner; that two sprays of OC spray had already been administered to the inmates when Stidham unnecessarily fired the additional OC rounds; and that Stidham aimed at Howard, the nonaggressor, with more than nontrivial force, causing a serious injury to his leg. Stidham may be able to persuade the fact finder that when she saw the inmates struggling, she was not able to distinguish the aggressor from the defender, that she attempted verbal orders and a warning buzzer before firing, and that she used her firearm only with the intent to restore order and not to harm Howard. The evidence before the court, however, including the footage, does not preclude a finding in Howard's favor on excessive force. Accordingly, the court will deny summary judgment as to his excessive claim against Stidham in her individual capacity.[6]

The court cannot find that Howard has stated any § 1983 claim against other defendants related to Stidham's use of the OC rounds. He cannot build claims that supervisory officers implemented faulty policies on use of force, or poorly trained or supervised employees by merely stating that they did so. Iqbal, 556 U.S. at 678. His factual allegations and exhibits simply do not support a plausible claim of supervisory liability for Stidham's actions. Shaw, 13,

---

[6] The material disputes that preclude summary judgment on the merits of the excessive force claim are also fatal to the defendant's argument for summary judgment on the ground of qualified immunity. See Buonocore v. Harris, 65 F.3d 347, 359 (4th Cir. 1995) (holding that when resolution of qualified immunity question and case itself both depend upon a determination of what actually happened, summary judgment on grounds of qualified immunity is not proper).

F.3d at 799. At the most, he demonstrates that in response to his grievance appeals about Stidham's actions, Artrip and Elam did not reach the outcome he desired. These after-the-fact rulings played no role, however, in the alleged constitutional violation—Stidham's use of excessive force.

Howard's allegations of conspiracy must also be dismissed. Stating a conspiracy claim requires allegations of facts that, if proven, reasonably lead to the inference that purported conspirators shared the same objective to try to "accomplish a common and unlawful plan" to violate the plaintiff's federal rights. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). "[R]ank speculation and conjecture" or conclusory labeling of the defendants' actions as a "conspiracy" as Howard has done here cannot state an actionable claim. Id. at 422. Finally, Howard has no claim actionable under § 1983 regarding his allegations that the defendants failed to follow prison procedures. Riccio v. Cty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

For the reasons stated, the court will deny the defendants' motion for summary judgment as to the excessive force claim against Stidham in her individual capacity. The court will grant their motions as to all other claims related to that alleged use of force.

### D. Investigation

Howard's separate claim against Fannin for the investigation of the use of force by Stidham must be dismissed. Howard has no constitutional right to have Tanner criminally prosecuted for the assault or to have Stidham disciplined for her actions. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) (holding that private individual does not have any constitutional right to, or any judicially cognizable interest in, the prosecution or non-prosecution

of another person); Leeke v. Timmerman, 454 U.S. 83, 86-87 (1981) (holding that South Carolina inmates allegedly beaten by prison guards had no judicially cognizable interest in having those guards criminally prosecuted). The court will grant Fannin's motion to dismiss as to this claim.

### III. CONCLUSION

For the reasons stated, the court will deny the defendants' motions as to the claim against Swiney, Stallard, and Artrip in their individual capacities for failing to protect Howard. The court will also deny the motion for summary judgment as to the excessive force claim against Stidham in her individual capacity. The court will grant the defendants' motions as to all other claims and will also deny Howard's motion for summary judgment. An appropriate order will issue this day.

ENTER: This 26th day of February, 2019.

_____
Senior United States District Judge